ELECTRO BLEACHING GAS CO. et al. v. PARADON ENGINEERING CO., Inc.

(Circuit Court of Appeals, Second Circuit. May 17, 1926.)

No. 369.

1. Patents ⬡328—1,142,361, claims 4, 5, 6, 8, 10, for process for sterilizing water with chlorine by separate minor flow held valid and contributorily infringed.

Ornstein patent, No. 1,142,361, claims 4, 5, 6, 8, 10, for process for sterilizing water by introduction of chlorine by separate minor flow, held valid and contributorily infringed.

2. Patents ⬡178.

Patentee making great advance is entitled to a commensurate range of equivalents.

3. Patents ⬡259—Sale of device with intention that it shall be used for purification of water in accordance with plaintiff's process, and by means equivalent to plaintiff's disclosure, contributorily infringes plaintiff's process.

Offering for sale device which may be and ordinarily is used, and is sold with intention of being used, for purification of water in accordance with plaintiff's disclosed means, constitutes contributory infringement of plaintiff's process.

Appeal from the District Court of the United States for the Eastern District of New York.

Patent infringement suit by the Electro Bleaching Gas Company and another against the Paradon Engineering Company, Inc. Decree for plaintiffs (8 F.[2d] 890), and defendant appeals. Affirmed.

Suit is upon claims 4, 5, 6, 8, and 10 of patent to Ornstein, No. 1,142,361, of which patent the Electro Bleaching Gas Company is the owner and Wallace & Tiernan Company the sole licensee. The claims in suit are all for a process; the nature thereof is sufficiently indicated by the fourth claim, which is as follows:

"In the sterilization of flowing water, the process which comprises establishing a separate minor flow of water, causing such minor flow to spread out in one portion of its

path to present an extended surface, contacting chlorine gas with such flow in such portion of its path, thereafter uniting such minor flow of water with the main body of flowing water to be sterilized, and controlling the quantity of chlorine supplied to the main body of flowing water by controlling the rate of supply of chlorine gas to the minor flow of water."

The defendant is accused of a species of contributory infringement; i. e., it does not practice and never has practiced the patented process, or any other process of sterilizing flowing water; it only manufactures a machine or mechanical device which may be used (and commonly is used) for the purpose of sterilization. It is in fact admitted that what defendant makes and sells is substantially identical with the device commonly made and sold by the Wallace Company as and for the *means* of utilizing or applying the patented process.

There is, however, a difference (asserted to be very material) between the device made and sold by the defendant and the means of utilization disclosed by Ornstein in his application. The court below found for plaintiffs, granted the usual interlocutory decree, with injunction and accounting, and defendant appealed.

Mayer, Warfield & Watson, of New York City (Lawrence Bristol and C. A. L. Massie, both of New York City, of counsel), for appellant.

Wood, Molloy & France and Loren N. Wood, all of New York City, for appellee Electro Bleaching Gas Co.

Cooper, Kerr & Dunham and Drury W. Cooper, all of New York City, for appellee Wallace & Tiernan Co.

Before ROGERS, HOUGH, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The validity of this patent has been sustained, not only by Campbell, District Judge, in the court below, but in the District Court for the Western District of Missouri by Van Valkenburgh, District Judge. Electro Bleaching Gas Co. v. Miller, 264 F. 429. In these opinions the history of Ornstein's patent and the development of water purification by the introduction of chlorine are set forth with thoroughness and at great length. We have nothing to add to them; we agree with their result, and only note that, although this case was tried five years after decision in the case cited, and great effort had obviously been put forth to further investigate the history and development of processes of purification more or less similar, there is no material difference between the record here considered and that passed on by Judge Van Valkenburgh.

We now assume validity and shall briefly consider noninfringement. As above noted, the charge is of contributory infringement, and the decree complained of enjoins defendant "from directly or indirectly using or contributing to the use of the inventions covered by claims numbered" as above; and defendant is further enjoined "from making or causing to be made, using or causing to be used, selling or causing to be sold, or installing or causing to be installed any apparatus for use in the United States of America and its territories *in practicing the process of the said claims.*"

It is said that this injunction goes beyond any formula hitherto applied to one called a contributory infringer, and that under this precedent the owner of a process patent may enjoy a substantial monopoly of all and every device or appliance for the utilization of the patented process, even though such device or appliance is the original invention of another. This argument gets ahead of the facts at bar. We are not required to pass on the question whether the owner of a process patent can or cannot restrain as a contributory infringer one who devises and offers for sale a method or means of utilizing the process of which the patentee never thought, and concerning which he revealed nothing. That bridge may be crossed when we come to it.

The question here is humbler, viz.: Are the means furnished by defendant the reasonable equivalent of the means described by Ornstein in his specification? Ornstein says frequently in his disclosure, and varies his phrases in saying, that he first establishes "a separate minor flow of water." He then causes that flow to "spread out" and "present an extended surface" to a counter flow of chlorine gas.

Ornstein's extended surface he produced by sending his minor flow "downward through a tower, or the like, filled with coke, stone, or any other material adapted to *film out* the water," and "upward through this tower" he simultaneously passed a current of chlorine. Plaintiffs' licensees and defendant no longer use the tower; they pass their minor flow through a pipe, one portion of which is contracted so as to form a strait or throat.

When a current of water is passing through a pipe or passage of uniform width

or diameter, and it encounters a passage of substantially smaller diameter, the water, on leaving this passage or strait, will "film out"; i. e., break up into sheets and temporarily expose to impregnation by any gas a much larger surface than when it is solidly flowing. Defendant's device and that of plaintiffs' licensee applies the chlorine by what is called an injector, just as the water is filming out as a result of passage through the throat or strait. It has been found, and we agree, that this patent is one of importance.

[2] The advance made by Ornstein was very great, and it is undoubted that he is therefore entitled to a commensurate range of equivalents. The Paper Bag Patent Case, 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122. He was the first to appreciate, and in effect claim, the advantages derivable from "filming out" his minor flow of water. Therefore his method of filming out and that of the defendant's device are to be regarded as equivalents.

[3] But, if defendant is offering for sale a device which may be used, is ordinarily used, and is sold for the purpose of being used, for the purification of water in accordance with plaintiffs' process, and by a means which is the equivalent of plaintiffs' disclosed means, there can be no doubt of plaintiffs' right of recovery. This case is far within the doctrine of Westinghouse, etc., Co. v. Precise, etc., Co. (C. C. A.) 11 F.(2d) 209. We need not attempt to formulate any rules concerning possible contributory infringement of a process patent by other inventors of new, useful, and original methods of utilizing a patented process.

Decree affirmed, with costs.