### ELECTRO BLEACHING GAS CO. et al. v. VILLAGE OF GARDEN CITY.

District Court, E. D. New York. October 30, 1926.

No. 2748.

Wood, Molloy & France, of New York City, for plaintiffs.

Mayer, Warfield & Watson, of New York City, for defendant.

CAMPBELL, District Judge. This is a motion for a preliminary injunction in a patent case.

The plaintiffs' patent, No. 1,142,361, issued to Ornstein, for improvements in process of antisepticizing water, dated June 8, 1915, has been held valid in an action of Eelectro Bleaching Gas Co. v. William G. Miller et al., in the District Court of the United States, for the Western Division of the Western District of Missouri, claims 1 to 12 being involved, reported in 264 F. 429, reversed by the Circuit Court of Appeals for the Eighth Circuit, 276 F. 379, without passing on the validity of the patent, on the ground that the defendant was not a contributory infringer, and in the action of Electro Bleaching Gas Co. et al. v. Paradon Engineering Co., Inc., in the United States District Court for the Eastern District of New York, claims 4, 5, 6, 8, and 10 being involved, reported in 8 F.(2d) 890, which was affirmed by the Circuit Court of Appeals for the Second Circuit, and reported in 12 F.(2d) 511.

Claims Nos. 4, 5, 6, 8, and 10 of the patent in suit, involved in the former actions above described, are the same claims on which this action is based.

The former suits were based on no apparatus patent, but they were based on a process patent.

The question in the case at bar is whether the defendant is using the process of the said Ornstein patent, No. 1,142,361.

The answer of the defendant in this suit alleges, in addition to the patents and writings alleged to show prior art and invalidity of the patent in suit, in the answer in the suit by Electro Bleaching Gas Co. et al. v. Paradon Engineering Co., Inc., tried in this district, only the Bull apparatus patent, No. 1,012,809, and a printed publication entitled, "Proceedings of the Fifth Annual Convention of the Indiana Sanitary and Water Association, of February 16, 1912," at Indianapolis, Ind., particularly pages 118–123 thereof, containing an article by Bull, of Chicago, and a discussion of said article.

The defense interposed is therefore substantially the same as that interposed in the

aforesaid case against the Paradon Engineering Company, Inc., in this district, and for the purposes of this motion the validity of the patent in suit must be assumed.

The defendant, however, opposes the granting of a preliminary injunction, because although it uses the same character of chlorinating apparatus as was in question in the aforesaid suit against the Paradon Engineering Company, Inc., it contends that there has been added to such apparatus what is called a "Bull pot," being a steel pipe about 36 inches long and 3 inches inside diameter, its cylindrical walls being about a quarter of an inch thick, threaded at each end, the two ends being removably closed by reduction caps, screwed into place and provided with lugs, by which either or both the end caps can be readily unscrewed, so as to afford access to the interior of the Bull pot, and that each of these end caps carries a nipple of silver.

The defendant further contends that the Bull pot at Garden City is supported in horizontal position, and two pieces of rubber hose are secured upon the two silver nipples aforesaid, and that one hose receives the chlorine solution coming from the original Paradon machine, and delivers it through the silver nipple into the Bull pot, and the other hose branches, one branch delivering into the intake of one of the pumps, and the other branch delivering into the intake of the other pump.

By reason of this addition, if the Bull pot be kept filled with iron particles, it contends that it is not practicing the process of the Ornstein patent in suit, but that the chlorinating unit with the pot embody the apparatus of claim 1 of the Bull patent, No. 1,012,809, and that the same, when normally used, is adapted to, and does, practice the process of claim 2 of the Bull patent, No. 1,-012,808; the Paradon Engineering Company, Inc., being licensed under both patents, the defendant taking its license from said corporation.

Even if the process described above, which defendant contends it is using, would be that of the Bull patent and not that of the Ornstein patent in suit, which I do not find, the weight of the evidence clearly shows that it is not followed by the defendant.

■ This is not an action against a contributory infringer, and even if the Paradon Engineering Company, Inc., did give the instructions which it claims to have given, that will not aid the defendant in this suit, if it has failed to observe them.

■ The purpose of the Bull process patent was to make ferric chlorine as a precipitant or coagulant, by causing the chlorine containing solution to pass upward in the receptacle, through the comminuted iron, which is acted upon to produce an iron solution, which passes into the water to be purified, and not to accomplish a treatment of the major flow with the free chlorine. If this was not so, there would be no use in having the pot filled with comminuted iron.

The Standard Dictionary defines "comminute" as, "To reduce to minute particles or powder."

The defendant claims it is using "particles of iron."

The same dictionary defines a "particle" as, "A minute part, piece or portion of matter, as a particle of dust," and again, "A particle is a very small part of any material substance, as particle of sand or of dust."

There is no positive evidence on the part of the defendant as to what was in the so-called "Bull pot," at Garden City.

The evidence by affidavit on behalf of the plaintiffs shows that it was filled with ten-penny wire nails. Such nails are not what was described by Bull as "comminuted iron."

Plaintiffs show that an actual test of the chlorine solution, coming from the pot, using the methods commonly used to detect a measurable amount of such material in water, does not disclose any ferric chlorine.

The chemist who testified for defendant used the most sensitive test for detecting the presence of iron, and says that he found iron in the sample which he took of the solution, after it had passed through the Bull pot and just before it entered the pumping system, but did not indicate the quantity.

From all of the evidence, it does not seem to me that defendant was using its apparatus to make ferric chlorine as a precipitant or coagulant, but was using it for the purpose of chlorination, by the process involved in the suit against Paradon Engineering Company, Inc., tried in this district.

■ Defendant contends that because of the danger to the public health, the smallness of the amount involved, and the financial responsibility of the village, no preliminary injunction should be granted; but this contention does not seem to me to outweigh plaintiffs' right to protection, especially in view of the evidence that the village could, within about three days, and at a cost of about $700, replace the infringing apparatus by one that does not infringe.

So that there may be no danger, however, and the village may have ample time to arrange to comply with the injunction, the

plaintiffs will be granted a preliminary injunction, in giving security in a sum to be determined on the settlement of the order, but such injunction will not be issued until 20 days after the entry of the order to be entered on this motion.

Settle order on notice.