## CHATTANOOGA CORPORATION, Plaintiff,

v.

**Dale H. KLINGLER, Harlan B. Jensen, Thomas H. Church, Richard Wilkins, Lewis C. Duncan, and James W. Sauder, Defendants.**

**Civ. No. 1–81–145.**

United States District Court, E.D. Tennessee, S.D.

July 26, 1985.

John B. Phillips, Jr., John Seymour, Stophel, Caldwell & Heggie, Chattanooga, Tenn., Ronald T. Lindsay, Charles B. Park, III, Bell, Seltzer, Park & Gibson, Charlotte, N.C., for plaintiff.

Hugh J. Moore, Jr., Geoffrey G. Young, Witt, Gaither & Whitaker, Chattanooga, Tenn., V'Frank Asaro, Asaro & Associates, San Diego, Cal., for defendants.

## MEMORANDUM

EDGAR, District Judge.

This matter presently appears before the Court on defendants' motion to dismiss, pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure and pursuant to 28 U.S.C. § 2201. Plaintiff seeks a declaratory judgment that certain patents assigned to it were not infringed by the plaintiffs. Defendants claim that plaintiff has failed to state a cause of action upon which relief may be granted and that the present matter is not appropriate for declaratory judgment. Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), and 28 U.S.C. § 1338 (civil action relating to patents).

This matter has been before the Court for more than four years. A motion to dismiss was previously filed which was granted by then Judge Frank W. Wilson, but which was reversed and remanded by the Sixth Circuit Court of Appeals on the issue of personal jurisdiction. Defendants now come to the Court seeking a dismissal on the basis of the inappropriateness of the declaratory action because, as defendants characterize the suit, the present action is actually one for breach of contract and not for patent infringement.

Defendant Dale H. Klingler was President of Vari-Temp Manufacturing Company, and the other defendants are former stockholders of that company. Defendant James W. Sauder obtained two U.S. letters patent and some corresponding form patents covering devices manufactured by Vari-Temp. Mr. Sauder assigned these patents to the corporation. Mr. Sauder also filed and assigned to Vari-Temp applications for two additional U.S. letters patent. In July of 1977, Vari-Temp and Chattanooga Pharmaceutical Company (plaintiff's prior name) entered into negotiations with each other concerning the latter's purchase of the assets of Vari-Temp, included among which were the U.S. letters patent. On August 31, 1977, the parties executed a Memorandum of Sale and Bill of Sale and Assignment conveying the assets of Vari-

Temp to Chattanooga Corporation. Vari-Temp was liquidated prior to sale and the assets were actually conveyed to Chattanooga Corporation by the individual stockholders to whom the assets had been distributed in liquidation. Under the agreement, Chattanooga Corporation was required to make certain royalty payments to defendants and these payments were made for approximately three and one-half years.

On April 20, 1981, Chattanooga Corporation wrote to each of the defendants repudiating the Memorandum of Sale. Plaintiff then immediately filed a declaratory action seeking a declaration that the U.S. letters patent were not infringed by plaintiff and that the Memorandum of Sale was null and void. Defendants filed a motion to dismiss and Judge Frank Wilson entered an order on December 3, 1981 dismissing the case based on the following rationale:

> [T]he lack of jurisdiction over five of the defendants, the superiority of California as an appropriate forum, the lack of a strong public policy urging resolution of patent validity in this instance, the appearance of forum shopping, the venue problems, and the preemption of the parties' arbitration agreement all militate against this Court's exercise of its power to render a declaratory adjudication. While no one factor is controlling, the Court believes the combination argues in favor of the dismissal of this case.

*Chattanooga Corp. v. Klingler,* 528 F.Supp. 372, 381, (E.D.Tenn.1981).

The Sixth Circuit, on appeal, reversed and remanded the case, concluding that the District Court did have personal jurisdiction over all defendants. *Chattanooga Corporation v. Klingler,* 704 F.2d 903 (6th Cir.1983). It is unclear to what extent the Sixth Circuit considered the other grounds which Judge Wilson gave in support of the dismissal. After the remand the defendants moved to dismiss or to transfer the case to the Southern District of California on venue grounds. That motion was denied by Judge H.. Ted Milburn. The defendants counterclaimed alleging that the plaintiff had engaged in fraud; had breach-

ed the Memorandum of Sale agreement; and had violated the Clayton and Sherman Acts. The Court, on motion of the plaintiff, bifurcated the trial, ordering that the antitrust issue posed by the defendant's counterclaim be separated from the patent/contract part of the case, with the antitrust issue to be tried immediately following the trial of the contract and patent issues.

Defendant's current motion to dismiss is premised on its assertion that the present action is one grounded in contract and not in patent law and is therefore inappropriate for declaratory action. Defendants contend that the plaintiff, as owner of the patents, cannot obtain a declaratory judgment concerning possible patent infringement since the defendants have raised no claim of infringement nor have they implied any intention to do so, nor are they empowered to do so. Plaintiff responds that the defendants maintained a reversionary interest in the patents and therefore, pursuant to plaintiff's abridgment of the Memorandum of Sale, plaintiff has exposed itself to a possible infringement action. Plaintiff points to provisions in the Memorandum of Sale which permit defendants to reclaim the patents upon failure of the plaintiffs to abide by the terms of the contract.

The parties in this case characterize the payments to be made under the Memorandum of Sale in different ways. On the one hand, plaintiff claims that defendants are attempting to exact continuing royalty obligations under the original assignment of the patent. On the other hand, defendants characterize their demands as damages for breach of contract under the Memorandum of Sale. In essence, the parties are talking about the same matter since the contract is the embodiment of the assignment of the patents. Thus, this Court must determine whether the determination of the patent issue is of such import at this juncture to justify the parties proceeding on a declaratory action.

Only cases actually arising under the patent laws, not cases which merely

may tangentially involve patent questions, are within the jurisdiction of the federal courts under 28 U.S.C. § 1338(a). *Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418, 420 (7th Cir.1977). Furthermore, while plaintiff is correct in asserting that there is a strong policy interest in assessing the validity of patents, *see Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), declaratory actions require an actual controversy which is within the court's jurisdiction in order for a court to undertake a proceeding. *Robin Products Company v. Tomecek*, 465 F.2d 1193, 1195 (6th Cir.1972). To constitute an actual controversy, an actual charge of infringement must exist or there must be sufficient conduct or action by the putative defendant in order to justify a declaratory action. *Goodrich-Gulf Chemicals, Inc. v. Phillips Petroleum Co.*, 376 F.2d 1015, 1018 (6th Cir.1967); *see also Super Products Corp. v. DP Way Corp.*, 546 F.2d 748, 753 (7th Cir.1977). The courts' authority to declare a patent invalid under the Declaratory Judgment Act is grounded on there existing a controversy concerning infringement of the patent. *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 313 F.Supp. 253, 255 (D.Del.1970), *aff'd*, 448 F.2d 1328 (3rd Cir.1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972).

■■■ The applicable standard for ascertaining the existence of a controversy under the Declaratory Judgment Act is whether there is a "[w]ell grounded fear that should [the plaintiff] continue or commence the activity in question, he faces an infringement suit or the damaging threat of one to himself and his customers. The touchstone is a *reasonable apprehension.*" *Japan Gas Lighter Association v. Ronson Corp.*, 257 F.Supp. 219, 237 (D.N.J.1966) (emphasis in original). *See also Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871, 874 (1st Cir.1971); *Societe de Conditionnement en Aluminum v. Hunter Engineering Co.*, 655 F.2d 938 (9th Cir.1981). Even a refusal by a patent holder to grant a request for patent clearance does not give rise to a sufficient controversy. *See International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1214 (7th Cir.1980).

Plaintiff contends that the defendants' demand for damages, characterized as contract damages by the defendant and royalty payments by the plaintiff, indicate that the defendants are seeking to hold the plaintiff liable for infringement of patent. In essence, plaintiff contends there is a federal patent question while defendants argue that the matter is solely one of state contract law. Nonetheless, the Court must look to the defendants' actions and deeds in order to ascertain whether the controversy is one of patent or contract. *International Harvester Co.*, 623 F.2d at 1211. *Milprint, Inc. v. Curwood, Inc.* is instructive as to determining the appropriateness of a declaratory action. In *Milprint*, the controversy was between a licensor and a licensee of a patent. The licensee sought a declaration that the patent which was the subject of the license was invalid and that no further royalty payments were due to the licensor. While the case is somewhat complex in its procedural setting, the court in *Milprint* declared:

> But where the licensor stands on the license agreement and seeks contract remedies, even an allegation of infringement will not create federal jurisdiction for the existence of the license precludes the possibility of infringement. 562 F.2d at 420.

What the court sought to avoid was a party using the Declaratory Judgment Act as an affirmative means of promulgating what should solely be a defense in a state law matter. *Id.* at 422. The court went on to hold that:

> [W]here diversity is lacking, a patent licensee's declaratory complaint which asserts patent invalidity simply to avoid the obligations of the license does not state a claim arising under the patent laws within the meaning of 28 U.S.C. § 1338(a). *Id.*

The dispute in this case rages over who owes whom money under a contract to

which all parties ascribe their signatures. Nowhere in the pleadings does it appear that the defendant has charged the plaintiff with infringement.[1] Rather, the defendant seeks to collect under a contract to which one possible defense is the invalidity of the patent. It is noteworthy that the District Court determined in this case long ago that it is an "inescapable conclusion" that the cause of action "arose under the contract and not because of infringement per se." 528 F.Supp. at 381. This determination was not overturned by the Sixth Circuit. 704 F.2d 903 (1983). Because this case is in contract and not in patent, the concerns of *Lear, Inc. v. Adkins, supra,* do not come into play. Furthermore, since the plaintiff still owns the patent here, the issue of licensee estoppel is not relevant. Finally, the infirmities present here concerning the declaratory action distinguish this case from *Lear.*

This Court determines that the challenge to the assigned patents is simply an affirmative defense and that there has been no indication that the defendants intend to charge the plaintiff with infringement. Therefore, this Court concludes that 28 U.S.C. § 1331 and 28 U.S.C. § 1338 do not grant this Court subject matter jurisdiction over plaintiff's claim, and further, that plaintiff's claim is inappropriate for relief under the Declaratory Judgment Act. The defendants' motion to dismiss will be GRANTED.

We are thus left with the defendants' counterclaim for fraud, for breach of contract, and for antitrust law violations. The Court has independent subject matter jurisdiction of these claims under 28 U.S.C. § 1332 (diversity of citizenship), and under 28 U.S.C. § 1331 and 1337 (federal question/antitrust). The Court also has personal jurisdiction over the parties. This counterclaim will proceed to trial, even though the plaintiffs case has been dismissed. Rule 13(i) Federal Rules of Civil Procedure. The case will proceed to a bifurcated trial

before a jury, with the fraud contract claims being tried first, and the antitrust issues being tried second.

An appropriate order will enter.

ENTER.

---

1. The possibility that defendants may repossess the patents and sue for infringement seems very remote. Plaintiffs emphasis upon this appears to be an attempt to create a patent issue where such does not really exist.