Ari JUBELIRER, Plaintiff,

v.

MASTERCARD INTERNATIONAL, INC. and MBNA American Bank, National Association, Defendants.

No. 99–C–256–S.

United States District Court,
W.D. Wisconsin.

Sept. 17, 1999.

Keelyn M. Friesen, Zimmerman Reed P.L.L.P., Minneapolis, MN, for Ari Jubelirer, plaintiff.

Brian E. Butler, Stafford Rosenbaum Rieser & Hansen, Madison, WI, Jay N. Fastow, Weil, Gosthal & Manges LLP, New York City, for Mastercard International Inc., defendant.

Stanley J. Adelman, Rudnick & Wolfe, Chicago, IL, Steven C. Underwood, Neider & Boucher, Madison, WI, for MBNA America Bank, National Association, defendant.

## MEMORANDUM AND ORDER

SHABAZ, Chief Judge.

Plaintiff Ari Jubelirer lost $20 gambling at an Internet casino. He commenced this action against defendants MasterCard International, Inc. and MBNA American Bank, N.A., claiming that defendants' participation in financing his gambling constitutes a violation of the Racketeer Influenced and Corrupt Organizations Act and entitles him to a declaration that his obligation to defendant MBNA is uncollectible. Jurisdiction is alleged under 28 U.S.C. §§ 1331, 1332 and 1367. The matter is presently before the Court on defendants' motions to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted or, alternatively, to dismiss the complaint pursuant to Rules 12(b)(7) and 19 for failure to join the Internet casino as an indispensable party. The following is a summary of the facts alleged in the complaint.

### FACTS

There are numerous sites on the Internet, known as on-line casinos, which offer gambling to any individual with Internet access. Many of these sites operate from outside United States borders but are easily accessed from any computer in the United States with Internet access.

Defendant MasterCard operates a computer financial transaction processing system which provides authorization, processing and settlement services for approximately ten million merchants worldwide. MasterCard contracts with merchants to receive a fee for each use of a MasterCard credit card with a contracting merchant. MasterCard provides its services to on-line casinos including a site known as "Casino 21."

Defendant MBNA participates in the MasterCard computer payment system and offers MasterCard credit cards to its banking customers. When an MBNA customer authorizes the use of the MBNA MasterCard to pay for a purchase MBNA finances the purchase, debits the customer's account and bills the customer for the cost of the goods or services together with interest and fees. In attempting to collect the debt, MBNA sends statements through the mail to its credit card holders.

By agreeing to accept charges at on-line casinos the defendants greatly assist the ability of the casinos to operate over the Internet, tremendously increase the casinos' profit potential and create a new source of revenue for themselves.

Plaintiff activated the Casino 21 web site and was instructed to open an account with his credit card. He used his MBNA MasterCard credit card to place a deposit of $25.00 in order to receive 25 chips for use

in wagering at the casino. At each wager plaintiff was required to authorize credits from his credit card. Plaintiff won at the game of black jack approximately three times with bets between $20 and $25. Plaintiff continued to wager and subsequently lost four times leaving him with a debt of $20.00 plus a $4.95 processing fee. Plaintiff thereby incurred an obligation to MBNA for the gambling loss, finance charges and interest which appeared on his MBNA credit card account balance.

## MEMORANDUM

Defendants each move for dismissal of plaintiff's third amended complaint ("complaint"), attacking the sufficiency of the complaint as it relates to several elements of the RICO claim and asserting that as a matter of law there is no viable claim for aiding and abetting a RICO violation. Defendants also challenge the availability of a declaratory judgment under the circumstances and argue that the plaintiff is barred from proceeding under either state or federal law by the doctrine of *in pari delicto*. Finally, defendants contend that even if a viable claim is stated, the matter should be dismissed for failure to join "Casino 21" as an indispensable party. Plaintiff opposes all aspects of the motions.

A complaint should be dismissed for failure to state a claim only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In order to survive a challenge under Rule 12(b)(6) a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984).

*Violation of 18 U.S.C. § 1962(c)*

■ The complaint alleges that defendants have violated 18 U.S.C. § 1962(c):

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim under § 1962(c) plaintiff must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Goren v. New Vision Intern., Inc.,* 156 F.3d 721, 727 (7th Cir.1998) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Because the allegations of the complaint are insufficient to support the existence of a RICO enterprise or the conduct of such an enterprise by the defendants the § 1962(c) claim must be dismissed.

■ A RICO enterprise can be either a legal entity or an extra-legal "association in fact." *Jennings v. Emry,* 910 F.2d 1434, 1440 (7th Cir.1990). Plaintiff does not allege or contend that Casino 21 is the "entity" for purposes of its RICO violation, perhaps because there is no basis to allege that either defendant conducted the business of the casino. Rather, plaintiff bases the RICO claim on an alleged extra-legal association in fact between the defendants and the Internet casinos. However, plaintiff's allegations concerning such an association in fact simply cannot support the RICO enterprise requirement.

■ A' RICO enterprise must be "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995). But the allegations of the complaint make clear that there is no "structure" for "hierarchical or consensual decision making." There is nothing more than a simple contract for services of a type entered by millions of others. Defendant MasterCard operates a computer system for processing consumer purchases. It offers these services for a fee to merchants throughout the world and

more than 10 million merchants contract for them. Defendant MasterCard also contracts with lenders such as defendant MBNA to allow their customers to purchase goods and services from MasterCard associated merchants. Defendant MBNA collects the debt incurred by its customers regardless of the authorized merchant from whom the customer purchased the goods or services, no doubt giving little thought to the ten million MasterCard merchant subscribers except to the extent that the broad array of participating merchants is appealing to its customers. There is no hierarchical or consensual decision making. Each party conducts its own affairs which include certain contracts for services with others.

 Accepting plaintiff's allegations as sufficient to allege a RICO enterprise would lead to the absurd conclusion that each of the many million combinations of merchant, MasterCard and lender is a RICO enterprise. However broadly worded, the RICO statute is not to be applied to "situations absurdly remote from the concerns of the statute's framers." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir.1997). An enterprise must be more than a routine contractual combination for the provision of financial services.

 Assuming that Casino 21 and its fellow on-line casinos constitute RICO "enterprises" the law is clear that merely having a business relationship with and performing services for such an enterprise, including financial, accounting and legal services, does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise. *Goren*, 156 F.3d 721, 728 (collecting cases at n. 7). This is true even though the service provider knows of the enterprise's illicit nature or performs improper acts itself. *Id.* In all such cases the services performed facilitate the enterprise's activities, but that alone is not enough to satisfy the requirement. This clearly established principle cannot be circumvented by attempting to characterize a routine

contractual relationship for services as an independent enterprise.

Plaintiff has alleged facts which make it apparent that the only relationship between the on-line casino and the defendants is a routine contractual relationship for the provision of consumer financing. That relationship does not constitute a RICO enterprise and the performance of such services does not constitute the operation or management of an enterprise. Accordingly, defendants are entitled to dismissal of plaintiff's § 1962(c) claim.

*Aiding and Abetting a RICO Violation*

 Plaintiff makes a separate claim for aiding and abetting a violation of RICO. Defendants argue that the Supreme Court's reasoning in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), precludes such a claim. The Seventh Circuit has so far declined comment on the viability of a civil claim for aiding and abetting a RICO violation after *Central Bank. American Automotive Accessories, Inc. v. Fishman*, 175 F.3d 534, 543 (7th Cir.1999). Because the issue presents only a question of law, it is appropriately resolved on a motion to dismiss.

*Central Bank* rejected a civil aiding and abetting claim in connection with an alleged violation of § 10(b) of the Securities Exchange Act of 1934. The primary basis for the Court's holding was that absent language in the statute creating liability for aiding and abetting, no such liability could be implied:

Congress knew how to impose aiding and abetting liability when it chose to do so. If, as respondents seem to say, Congress intended to impose aiding and abetting liability, we presume it would have used the words "aid" and "abet" in the statutory text. But it did not.

We reach the uncontroversial conclusion, accepted even by those courts recognizing a § 10(b) aiding and abetting cause of action, that the text of the 1934 Act does not itself reach those who

aid and abet a § 10(b) violation. Unlike those courts, however, we think that conclusion resolves the case.

511 U.S. 164, 176–77, 114 S.Ct. 1439, 128 L.Ed.2d 119 (citations omitted). Like most courts which have addressed the issue since *Central Bank*, this Court finds no basis to distinguish an aiding and abetting claim under § 10(b) from a similar claim under RICO. *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 656–57 (3d Cir.1998) (so holding and collecting and discussing similar cases). The statutory text of § 1962(c) provides for no aiding and abetting cause of action and, under *Central Bank*, that controls the question. Plaintiff suggests that *Central Bank* is "narrowly tailored" to a securities claim. To the contrary, the holding is clear that it is not controlled by anything unique to securities law but by a fairly broad and clear rule of statutory interpretation. Plaintiff also suggests that RICO's broad remedial purpose should overcome the absence of express statutory authorization. The Supreme Court rejected a similar argument:

> To be sure, aiding and abetting a wrongdoer ought to be actionable in certain instances. The issue, however, is not whether imposing private civil liability on aiders and abettors is good policy but whether aiding and abetting is covered by the statute.

511 U.S. at 177, 114 S.Ct. 1439. In *Reves v. Ernst & Young*, 507 U.S. 170, 178–79, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Court expressly held that the language of § 1962(c), which requires that a defendant "participate" "in the conduct of" an enterprise, is narrower than liability for "aiding and abetting". It is therefore beyond doubt that § 1962(c), like § 10(b), does not impose liability on aiders and abettors. Implying a cause of action for aiding and abetting where the language is purposely drawn more narrowly would circumvent rather than further Congressional intent.

*Central Bank*'s analysis is controlling and requires dismissal of plaintiff's claim for aiding and abetting a RICO violation.

*Declaratory Judgment Claims*

▮▮▮▮▮▮ What remains of this case after dismissal of the RICO claims is a declaratory judgment action to stave off a potential $25 collection claim by defendant MBNA. Before considering the merits of the claim it must be determined whether it is within the Court's original jurisdiction and, if not, whether dismissal is appropriate pursuant to 28 U.S.C. § 1367(c)(3). The operation of the Declaratory Judgment Act enlarges available remedies but does not expand the Court's subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Federal jurisdiction generally exists if the defendant in the declaratory judgment action could have brought a coercive action in federal court to enforce its rights. *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 19, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In this case the question is whether defendant MBNA could have sued plaintiff in federal court to collect the $25 obligation he incurred in connection with Casino 21.

There is no diversity jurisdiction over such a claim because the amount in controversy requirement is unquestionably not met as to plaintiff's $25 claim and aggregation with potential class members is impermissible. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). As the named representative of a class plaintiff must himself satisfy the requirements of § 1332. *Northern Trust Co. v. Bunge Corp.*, 899 F.2d 591, 597 (7th Cir.1990); *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 930–31 (7th Cir.1996).

▮▮▮▮ Neither is there federal question jurisdiction over the declaratory judgment claims. Any coercive claim by MBNA to collect the debt would be a state law contract claim over which there would be no original jurisdiction. The fact that plaintiff might have a defense based on Federal law to such a claim does not support jurisdiction.

Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.

*Milprint, Inc. v. Curwood, Inc.,* 562 F.2d 418, 421 (7th Cir.1977) (quoting *Public Service Commission of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952)). Like *Milprint* the threatened coercive action here is purely a contract action properly litigated in state court. 562 F.2d at 422.

Accordingly, there is no independent basis for federal jurisdiction over the remaining declaratory judgment claims. In light of the fact that all federal claims have been dismissed at this stage of the proceeding the Court declines to exercise supplemental jurisdiction in accordance with 28 U.S.C. § 1367(c)(3). *See Wright v. Associated Ins. Companies, Inc.,* 29 F.3d 1244, 1251–52 (7th Cir.1994).

### ORDER

IT IS ORDERED that defendants' motions to dismiss are granted as they concern plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act, and that judgment be entered dismissing such claims with prejudice and costs.

*Jubelirer v. MasterCard International, Inc., et. al.,* 99–C–256–S

IT IS FURTHER ORDERED that the remaining claims for declaratory judgment are dismissed without prejudice for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(3)(c).